IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LATONYA VANDERVEER | : | |
| | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 16-1979 |
| | : | |
| FEDEX GROUND PACKAGE SYSYTEM, INC., ET AL. | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                    **FEBRUARY  3 , 2017**

    Presently before the Court is Defendants' Motion to Dismiss for Failure to State a Claim. (ECF No. 10.)  For the following reasons, Defendants' Motion will be granted.

**I.     BACKGROUND**

    This action is a dispute over the circumstances under which Plaintiff Latonya Vanderveer's employment with FedEx Ground Package System, Inc. ("FedEx Ground") was terminated.  Plaintiff asserts claims of race discrimination, gender discrimination, and disability discrimination against Defendants FedEx Ground and Craig Steiner.

    **A.     Factual Background**[1]

    Plaintiff, an African American woman, was employed as a non-package handler for Defendant FedEx Ground.  (*See* Compl. ¶¶ 21, 87, ECF No. 1.)  On December 18, 2014, Plaintiff was working in an unloading dock when her supervisor, Steiner, walked over and demanded that she and several package handlers work faster.  (*Id.* ¶ 24.)  Plaintiff claimed that she and her co-workers were not behind schedule, but that Steiner proceeded to point at Plaintiff's face and shout, "I've never taken over your operation, but I'm about to.  I can't believe you're taping a

---

[1] For the purpose of this Motion, the factual allegations in Plaintiff's Complaint are taken as true.  *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

package right now, you need to be telling these package handlers to hurry up, they're moving so slow and you aren't getting on them." (*Id.* ¶¶ 27-28.) After Plaintiff asked Steiner to stop pointing and lower his voice, Plaintiff told two package handlers to switch their positions. (*Id.* ¶¶ 29, 33.) Still yelling, Steiner indicated that Plaintiff needed to follow him to his office. (*Id.* ¶¶ 33-34.) Plaintiff asked Steiner to change his tone and said, "Craig, my parents do not yell and disrespect me in such a manner, so it is not ok for you to do so." (*Id.* ¶¶ 35-36.) Steiner responded, "Yea, well I may not be your parent but I am your supervisor and you will listen to me." (*Id.* ¶ 37.) Plaintiff stood still as Steiner continued yelling. (*Id.* ¶ 38.) Steiner stated: "You need to come here, right now. You're going to my office right now! If you don't, I'm going to write you up." (*Id.* ¶ 39.)

Plaintiff took out her phone and called Michelle Merhottein, a human resources representative. (*Id.* ¶ 40.) Steiner saw Plaintiff talking on the phone and asked who she was calling. (*Id.* ¶ 42.) Plaintiff responded, "Don't worry about who I'm calling, you wanted me to follow you, I'm walking." (*Id.* ¶ 43.) After the call went to voicemail, Plaintiff hung up and tried calling again. (*Id.* ¶ 44.) Steiner shouted, "Who are you calling? You're going to tell me whom you're calling or I'm taking the phone. As a matter of fact, give me the phone, it isn't yours, it's a company issued phone." (*Id.* ¶ 45.) As the phone was ringing, Stefanie Merritt, a staff member, walked out of her office and asked what was going on. She was told by Steiner to "mind her business." (*Id.* ¶¶ 46, 50.) Merhottein answered Plaintiff's call and Plaintiff asked her to come to the building. (*Id.* ¶ 51.) Merhottein asked what the problem was and Plaintiff responded that Steiner was getting in her face, yelling, and pointing. (*Id.* ¶ 52.) Plaintiff also stated, "I told you about [Steiner] and his temper and tone before." (*Id.*) While Plaintiff was on the phone, Steiner said, "You know what, this is ridiculous, you still need to come to my office.

As a matter of fact I'm going to my office right now, and I expect you to be right behind me." (*Id.* ¶ 53.) Plaintiff became extremely upset and began to cry. (*Id.* ¶ 54.) Merritt escorted Plaintiff to a conference room in an attempt to calm her down. (*Id.* ¶ 55.)

Steiner walked into the conference room and yelled, "I'm still expecting you in my office." (*Id.* ¶ 56.) Merritt then called Craig Somuda, another human resources representative, and asked what she should do. (*Id.* ¶ 59.) A short time later, Steiner stormed into the conference room again and said, "You still need to come to my office and if you're not going to come into my office you can leave and if you don't leave, I'm calling the police." (*Id.* ¶ 60.) Plaintiff attempted to exit the room but Steiner stood in the doorway and blocked her from leaving. (*Id.* ¶ 61.) Somuda told Merritt to take Plaintiff outside to wait in a car until security arrived. (*Id.* ¶ 64.) Merritt walked Plaintiff outside and told her to wait for either a security guard or a representative from human resources. (*Id.* ¶¶ 65, 68.) Plaintiff asked Merritt to retrieve her asthma pump and to get her some water. (*Id.* ¶ 66.) Jose, a security guard, arrived shortly thereafter and escorted Plaintiff back to the conference room where he took her statement. (*Id.* ¶¶ 68, 71.) After he took her statement, Jose told Plaintiff to wait for Adreece, another human resources representative. (*Id.* ¶ 72.) Ten minutes later, Adreece came into the conference room and told Plaintiff that an investigation would be opened, that she was to go home, and that she would be told when to return. (*Id.* ¶ 73.) Plaintiff was also told that she would be paid during this time. (*Id.*)

On December 24, 2014, Plaintiff was called to attend a meeting. (*Id.* ¶ 77.) At the meeting, Plaintiff was informed that she was terminated. (*Id.* ¶ 81.) Plaintiff asked why she was being terminated and was told that she "violated a number of policies," including being insubordinate and using foul language. (*Id.* ¶¶ 82-84.) Plaintiff then asked for a case number but

3

was given only a copy of a document entitled "Non-Package Handler Termination Benefits Summary" and a form entitled "RESPECT." (*Id.* ¶¶ 85-87.) Plaintiff was permitted to gather her belongings and she was escorted out of the building. (*Id.* ¶¶ 88-96.)

### B. Procedural History

On April 26, 2016, Plaintiff filed a Complaint in this Court. On June 22, 2016, Defendants filed a Motion to Dismiss. (Mot. to Dismiss, ECF No. 10.) Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss (Pl.'s Resp. ECF No. 15), and Defendants filed a Reply to Plaintiff's Response (ECF No. 16).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations." *Id*. at 679.  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis.  *Fowler*, 578 F.3d at 210.  First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true.  *Id*. at 210-11.  Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).  Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Finally, "a complaint need not establish a prima facie case in order to survive a motion to dismiss."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788-89 (3d Cir. 2016).  A prima facie case is "an evidentiary standard, not a pleading requirement."  *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002).  It therefore is "not a proper measure of whether a complaint fails to state a claim."  *Fowler*, 578 F.3d at 213.  "Instead of requiring a prima facie case, the post-*Twombly* pleading standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements."  *Connelly*, 809 F.3d at 789 (quoting *Phillips*, 515 F.3d at 234).

## III. DISCUSSION[2]

Plaintiff's Complaint asserts the following claims: Count I - race discrimination, gender discrimination, and retaliation under Title VII of the 1964 Civil Rights Act ("Title VII") against FedEx Ground; Count II - race discrimination and retaliation under 42 U.S.C. § 1981 against FedEx Ground and Steiner; Count III - disability discrimination and retaliation under the Americans with Disabilities Act ("ADA") against FedEx Ground; and Count IV - similar claims under the Pennsylvania Human Relations Act ("PHRA") against FedEx Ground and Steiner.[3]

### A. Race and Gender Discrimination Under Title VII, Section 1981, and the PHRA (Counts I, II, and IV)[4]

Title VII provides that it is an "unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a). "[A]n unlawful

---

[2] Defendants state that they seek to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. We assume that this was a mistake. Rule 12(b)(3) addresses dismissal based on improper venue. Venue here is proper under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims occurred within this judicial district. (*See* Compl. ¶ 13.)

[3] Plaintiff also asserts that she was subjected to a hostile work environment and she wishes to proceed on this claim. (*See* Pl.'s Resp. 6.) Plaintiff argues that because Defendants did not address this claim in their Motion to Dismiss, any argument should be deemed waived. (*Id.* at 6 n.5.) However, Plaintiff does not assert a separate claim for hostile work environment in her Complaint. She merely mentions hostile work environment in the factual background. (*See* Compl. ¶ 101.) The purpose of a complaint is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 326 (3d Cir. 2012) (internal quotation marks and citations omitted). We will nevertheless address a hostile work environment claim.

[4] The standards used in evaluating claims of race and gender discrimination under Title VII are also used in evaluating similar claims under 42 U.S.C § 1981. *Anderson v. Wachovia Mortgage Corp.*, 621 F.3d 261, 267 (3d Cir. 2010) (citation omitted). In addition, the analysis under Title VII is identical to the analysis under the PHRA. *Huston v. Procter & Gamble Paper Products Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citation omitted).

employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* § 2000e-2(m). The statute encompasses two theories of employment discrimination: a pretext theory as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), wherein a plaintiff claims that an employer's justification for an employment decision is false; and a mixed-motive theory as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), under which a plaintiff claims that an employment decision was made based on legitimate and illegitimate reasons. *Connelly*, 809 F.3d at 787. The difference between the theories "is in the degree of causation that must be shown: in a 'mixed-motive' case, the plaintiff must ultimately prove that her protected status was a 'motivating' factor, whereas in a non mixed motive or 'pretext' case, the plaintiff must ultimately prove that her status was a 'determinative' factor." *Id.* at 788. A plaintiff is "not obliged to choose whether she is proceeding under a mixed-motive or pretext theory." *Id.* at 791. However, Plaintiff here states that she was "pretextually and unlawfully terminated on or about December 18, 2014." (Compl. ¶ 22.) Plaintiff also uses the *McDonnell Douglas* framework when arguing her race and gender discrimination claims, (*see* Pl.'s Resp. 5), and does not claim that there were legitimate reasons for her termination. Therefore, we will proceed under the *McDonnell Douglas* framework.

Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802. The plaintiff establishes a prima facie case by showing that: (1) she is a member of a protected class; (2) she was qualified for the position she sought to retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v.*

*Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).[5]  The parties' dispute centers on fourth prong.  A plaintiff may establish the fourth prong of the prima facie case by alleging "that similarly situated individuals outside the plaintiff's class were treated more favorably [than she]."  *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 273-74 (3d Cir. 2010).  Alternatively, a plaintiff may establish an inference of discrimination by relying on circumstantial evidence that shows a causal nexus between her membership in a protected class and the adverse employment action.  *Greene v. Virgin Islands Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014).

Defendants argue that Plaintiff has pleaded only conclusory allegations and has failed to state facts sufficient to give rise to an inference of intentional discrimination.  (Mot. to Dismiss 4-5.)  Plaintiff argues that the severity of Steiner's behavior, along with the claim that such behavior was never seen directed towards Caucasians or males, raises an inference of intentional discrimination.  (Pl.'s Resp. 6.)  "The central focus of the inquiry in a case such as this is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin."  *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (internal quotation marks and citation omitted).  Plaintiff alleges that she never saw Caucasian or male employees treated in a similar manner.  (Compl. ¶¶ 99, 100.)  At this early stage of the proceedings, Plaintiff must state "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements" of her prima facie case.  *Connelly*, 809 F.3d at 789 (internal quotation marks and citation omitted).  However, conclusory allegations are not entitled to a presumption of truth.  *Id.*  Under *Twombly* and *Iqbal*, legal conclusions must be

---

[5] The elements for establishing a prima facie case are the same for race and gender discrimination claims.  *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999) (evaluating a racial discrimination claim under *McDonnell Douglas*); *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006) (evaluating a gender discrimination claim under *McDonnell Douglas*).

discounted, and allegations of historical fact must be accepted as true even if they are "unrealistic or nonsensical." *Iqbal*, 556 U.S. at 681. However, "some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Connelly*, 809 F.3d at 790 (quoting *Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592, 595 (1st Cir. 2011)). "[T]he clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point." *Id.*

Plaintiff's assertion that she never saw Caucasian or male employees treated in a similar fashion is a "legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Plaintiff is certainly aware that allegations of dissimilar treatment are often required in a case such as this. Nevertheless, she simply included bare assertions at the end of the factual background to the Complaint. (*See* Compl. ¶¶ 99-100.) Without factual detail, such allegations are boilerplate and insufficient. Several courts in the Eastern District of Pennsylvania have found that the failure to identify similarly situated individuals outside of the plaintiff's class who were treated more favorably results in an insufficiently pled claim. *See Magerr v. City of Phila.*, No. 15-4264, 2016 WL 1404156, at *8 (E.D. Pa. Apr. 11, 2016) (finding that the plaintiff failed to state a sufficient claim when he did not identify others who were treated better but instead claimed that he was denied "the same terms and conditions of employment available to other employees"); *Boone v. Pa. Se. Transp. Auth.*, No. 14-1373, 2014 WL 6861581, at *4 (E.D. Pa. Dec. 5, 2014) (finding that the plaintiff failed to state a sufficient claim in part because she did not "allege any facts regarding individuals . . . with whom we can compare Plaintiff"); *Barthold v. Briarleaf Nursing & Convalescent Ctr. Nursing Home*, No. 13-2463, 2014 WL 2921534, at *3 (E.D. Pa. June 27, 2014) (finding that the plaintiff failed to state a sufficient claim when she

9

alleged only that she was subject to discipline "for which other similarly situated Caucasian and younger employees were not disciplined").

If similarly situated individuals cannot be specifically identified, factual support must nevertheless be given that plausibly creates an inference of discrimination. *See, e.g.*, *Fortes v. Boyertown Area Sch. Dist.*, No. 06-0878, 2006 WL 3043108, at *4 (E.D. Pa. Oct. 20, 2006) (finding that the plaintiff sufficiently stated a discrimination claim by alleging that similarly situated individuals who were treated preferentially because of their race). Plaintiff has not only failed to identify similarly situated individuals outside of her class that were treated better, but she has also provided no factual details as to how others were treated better. Accordingly, Plaintiff has failed to sufficiently state a claim for race and gender discrimination under Title VII, 42 U.S.C. § 1981, and the PHRA.[6]

Plaintiff has also failed to allege any facts showing how Steiner's words and actions give rise to an inference of discrimination. Plaintiff's assertions that she "was treated in a disparate and illegal manner by virtue of her gender and race" and that she "was subjected to discriminatory actions by her supervisor by virtue of her race and gender" are wholly conclusory. (Compl. ¶¶ 97, 104.) Factually, the Complaint simply reflects that Steiner lost his temper due to Plaintiff's slow pace, which escalated into an argument. This is not sufficient.

---

[6] Although Plaintiff does not pursue claims under a mixed motive theory, her claims for race and gender discrimination nevertheless fail under this theory. Under the mixed-motive standard, a plaintiff must "present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" *Makky*, 541 F.3d at 214 (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003)). Determining whether a plaintiff has stated sufficient facts under the mixed-motive theory is similar to the analysis under the pretext standard. *See Tolan v. Temple Health Sys. Transp. Team, Inc.*, 557 F. App'x 132, 138 (3d Cir. 2014) (resolving a mixed-motive analysis by referring to a prior pretext analysis). For the reasons discussed above, Plaintiff has not pled any facts that demonstrate that her race or gender were motivating factors behind her termination.

**B.     Retaliation (Counts I, II, and IV)**[7]

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). In order to establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a protected employee activity; (2) she suffered an adverse employment action either after or contemporaneous with the employee's protected activity; and (3) a causal connection exists between the employee's protected activity and the employer's adverse action. *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). Defendants contest the first and third prongs.

Under the first prong, protected employee activity includes "opposition" activity, such as an employee's filing of formal charges of discrimination against an employer, as well as "informal protests of discriminatory employment practices, including making complaints to management." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (citation and quotation marks omitted). In determining whether a plaintiff adequately opposed discrimination, "we look to the message being conveyed [by a plaintiff] rather than the means of conveyance." *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). "The complaint must allege that the opposition was to discrimination based on a protected category, such as age or race." *Daniels*, 776 F.3d at 193 (citations omitted). When an employee opposes the employer's activity, "the employee must hold an objectively reasonable belief, in

---

[7] Section 1981 and PHRA retaliation claims are analyzed under the same framework as retaliation claims under Title VII. *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002); *Kant v. Seton Hall Univ.*, 289 F. App'x 564, 566 (3d Cir. 2008). Therefore, "interpreting any one of these statutes is equally relevant to interpretation of the others." *Fogleman*, 283 F.3d at 567. We will discuss the ADA retaliation claim in the next section.

11

good faith, that the activity they oppose is unlawful under Title VII." *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006).

To establish causation under the third prong, a "plaintiff usually must prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing . . . ." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Although the "mere passage of time is not legally conclusive proof against retaliation," an intervening pattern of antagonism is typically needed when temporal proximity is lacking. *See Robinson v. SEPTA*, 982 F.2d 892, 894-95 (3d Cir. 1993); *see also Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d Cir. 1997) ("[A] plaintiff can establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period.").

Defendants argue that Plaintiff fails to identify any unlawful or prohibited conduct in her Complaint. Defendants also contend that Plaintiff fails to plead facts sufficient to show causation. (Mot. to Dismiss 6.) Plaintiff responds that the retaliation stems from the complaint she made about Steiner's conduct over the phone to human resources representative Michelle Merhottein as Steiner was yelling. (Pl.'s Resp. 8.) Plaintiff also relies on her allegation that she told Human Resources about Steiner's "temper and tone" on a previous occasion. Plaintiff's allegations do not support a claim for retaliation. "Title VII's anti-retaliation provisions protect employees who oppose employment practices made illegal by Title VII. The plaintiff must therefore be opposing unlawful discrimination by expressing their criticism." *Brangman v. AstraZeneca, LP*, 952 F. Supp. 2d 710, 721 (E.D. Pa. 2013) (citing *Curay-Cramer*, 450 F.3d at 134-35; *Moore*, 461 F.3d at 343). Plaintiff complained about Steiner's "temper and tone," including the way he yelled and pointed, but not that she felt she was being unreasonably treated

12

because of her race or sex. (Compl. ¶ 52.) Steiner's conduct may be considered inappropriate work behavior; however, Title VII is not a "general civility code." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). Steiner's conduct, as pled, is not actionable under Title VII, which prohibits discrimination on the basis of race, color, religion, sex, or national origin. *See Daniels*, 776 F.3d at 195 (finding the plaintiff did not complain of race discrimination to her supervisor and therefore did not engage in protected activity); *Goodall-Gaillard v. N.J. Dep't of Corr.*, 625 F. App'x 123, 129 (3d Cir. 2015) (same); *see also Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (finding that a "general complaint of unfair treatment does not translate into a charge of illegal age discrimination"). Plaintiff has failed to sufficiently state a claim for retaliation as to race or gender under Title VII, 42 U.S.C. § 1981, and the PHRA.

### C. Disability Discrimination (Count III and IV)[8]

Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to [the] . . . discharge of employees . . . ." 42 U.S.C. § 12112. A "qualified individual with a disability" is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) that she is a disabled person under the ADA; (2) that she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that she has suffered an adverse employment decision as a result of discrimination. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d

---

[8] The ADA and PHRA "are all to be interpreted consistently, and that all have the same standard for determination of liability." *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (citing *McDonald v. Pa., Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 94-95 (3d Cir. 1995)).

296, 306 (3d Cir. 1999). Defendants argue that Plaintiff failed to state that she is disabled under the ADA, and that she was terminated because of her disability. (Mot. to Dismiss 9.) Plaintiff contends that her asthma constitutes a disability and that Defendants not only knew of it but attempted to cause an asthma attack.[9] (Pl.'s Resp. 9-10; Compl. ¶ 98.)

> 1.   *Disability*

Under the ADA, a disability is: (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Defendants argue that Plaintiff has not pled any facts to establish that she is disabled. (Mot. to Dismiss 9.) Plaintiffs argue that under the ADA's relaxed standards, her asthma is a physical impairment that substantially limits her ability to work. (Pl.'s Resp. 10.) We will therefore evaluate Plaintiff's alleged disability under the first prong.

A physical impairment is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as . . . respiratory . . . ." 29 C.F.R. § 1630.2(h). Thus, asthma is considered a physical impairment. *See, e.g.*, *Kaufman v. GMAC Mortgage Corp.*, No. 04-5671, 2006 WL 1371185, at *9-11 (E.D. Pa. May 17, 2006); *Meyers v. Conshohocken Catholic Sch.*, No. 03-4693, 2004 WL 3037945, at *7 (E.D. Pa. Dec. 30, 2004). An individual is substantially limited if she is "unable to perform a major life activity that the average person in the general population can perform." *Lescoe v. Pa. Dept. of Corrections–SCI Frackville*, 464 Fed. App'x. 50, 52 n.5 (3d Cir. 2012) (citation omitted). In determining whether a substantial limitation exists, courts consider "the condition under which the individual performs the major life activity; the manner in which the individual performs

---

[9] Plaintiff claims that Defendants contest only the first prong of Plaintiff's prima facie case. (Pl.'s Resp. 9.) This is incorrect. Defendants also argue that Plaintiff failed to state how her "disability was in any way linked to her adverse employment action." (Mot. to Dismiss 9.)

14

the major life activity; and/or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity." 29 C.F.R. § 1630.2(j)(4)(i). "'[S]ubstantially limits' is not meant to be a demanding standard" and it should "be construed in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2 (j)(1)(i).

Plaintiff "is not required, at this early pleading stage, to go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations." *Fowler*, 578 F.3d at 213. Because her prima facie case is an evidentiary standard, we need only determine whether there is a reasonable expectation that discovery will reveal evidence of the necessary elements. We are satisfied that because of the nature of Plaintiff's condition, there is a reasonable expectation that discovery may reveal she is incapable of working on the same level as others.

### 2. *Causation*

In fulfilling the third prong of the prima facie case, a plaintiff must demonstrate that she "has suffered an adverse employment action because of that disability." *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 (3d Cir. 1998) (citing *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). Discrimination under the ADA encompasses "adverse actions motivated by prejudice and fear of disabilities . . . ." *Taylor*, 184 F.3d at 306. However, to establish causation, "an employer must know of the disability." *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002) (citing *Taylor*, 184 F.3d at 313). Plaintiff alleges that Steiner "knew of her disability and upon information and belief tried to trigger an asthma attack." (Compl. ¶ 98.) The Third Circuit has determined that pleading upon information and belief is permissible "'where it can be shown that the requisite factual information is peculiarly within the defendant's

knowledge or control'—so long as there are no 'boilerplate and conclusory allegations' and 'plaintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'" *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (emphasis omitted) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)). Plaintiff has provided no facts to suggest that Steiner knew that she had asthma. The only mention of asthma in Plaintiff's Complaint involves conversations she had with staff member Stefanie Merritt, who told Plaintiff to calm down before having an asthma attack, and who was asked to retrieve Plaintiff's pump. (Compl. ¶¶ 55, 66.) Without factual support, Plaintiff's assertion that Steiner attempted to provoke an asthma attack is not only conclusory but also borders on the absurd. There is nothing in Plaintiff's Complaint that permits us to infer that Plaintiff was fired because of her asthma. Plaintiff has failed to adequately state a claim for disability discrimination under the ADA and PHRA.

        3.        *Disability Retaliation*[10]

To state an ADA retaliation claim, Plaintiff must establish that: (1) she engaged in a protected activity; (2) she experienced an adverse employment action following the protected activity; and (3) there is a causal link between the protected activity and the adverse employment action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). Under the ADA, "[r]equesting an accommodation is a protected employee activity . . . ." *Sowell v. Kelly Servs., Inc.*, 139 F. Supp. 3d 684, 702 (E.D. Pa. 2015) (citing *Sulima v. Tobyhanna Army Depot*, 602

---

[10] Plaintiff claims that because Defendants did not address the retaliation claim under the ADA, Defendants waived it. (Pl.'s Resp. 11.) "Generally, a district court may sua sponte dismiss a complaint under Rule 12(b)(6) after service of process only if the plaintiff is afforded an opportunity to respond." *Bethea v. Nation of Islam*, 248 F. App'x 331, 333 (3d Cir. 2007) (citing *Oatess v. Sobolevitch*, 914 F.2d 428, 430 n.5 (3d Cir. 1990)). Because Plaintiff has responded, we will address the claim.

F.3d 177, 188 (3d Cir. 2010); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003)).

Plaintiff argues that informing staff member Stefanie Merritt where the asthma pump was while the two were sitting in a car outside of the building constituted a request for an accommodation. Plaintiff alleges that her requested accommodation was to take "a break to use her asthma pump or to take a break from Steiner's verbal tirade." (Pl.'s Resp. 11; *see also* Compl. ¶ 66.) Even if we construe this as a request for an accommodation, it is not sufficient to state a claim for retaliation under the ADA. Plaintiff does not allege that her employer knew about her alleged request for an accommodation. Under the ADA, the "employer must know of both the disability and the employee's desire for accommodations for that disability." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999). "An employee's request for reasonable accommodation requires a great deal of communication between the employee and employer," as "both parties bear responsibility for determining what accommodation is necessary." *Id.* at 312. Plaintiff's request that her co-worker retrieve her asthma pump is not protected activity contemplated by the ADA. In addition, Plaintiff fails to allege any facts showing causation. Specifically, Plaintiff fails to demonstrate a causal link between her request for an asthma pump and her termination. Plaintiff's claim for disability retaliation under the ADA and PHRA will be dismissed.

### D. Hostile Work Environment

To properly allege a hostile work environment claim pursuant to Title VII, a plaintiff must demonstrate that: (1) she suffered intentional discrimination because of her membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable

17

person of the same class in her position; and (5) there is a basis for vicarious liability. *Brooks v. CBS Radio, Inc.*, 342 F. App'x 771, 775 (3d Cir. 2009).[11] "In employing this standard, a court must evaluate the frequency of the conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance." *Exantus v. Harbor Bar & Brasserie Rest.*, 386 F. App'x 352, 354 (3d Cir. 2010).

Plaintiff argues that determining whether discrimination is severe or pervasive is a fact-intensive inquiry, and thus summary judgment provides a more appropriate vehicle in resolving the issue. (Pl.'s Resp. 7.) However, Plaintiff's claim falters on the same grounds as her race and gender-based retaliation claims. "Title VII protects a plaintiff only [from] harassment based on discrimination against a protected class." *Ullrich v. U.S. Sec'y of Veterans Affairs*, 457 F. App'x 132, 140 (3d Cir. 2012). "Many may suffer severe or pervasive harassment at work, but if the reason for that harassment is one that is not proscribed by Title VII, it follows that Title VII provides no relief." *Id.* (citation omitted). As discussed above, Plaintiff has provided no facts to suggest that Steiner's conduct was related to Plaintiff's race or gender. As pleaded, Steiner's outburst related to the pace of Plaintiff's work. Although a plaintiff is not required "to demonstrate direct evidence of her harasser's motivation for discrimination," *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 278 (3d Cir. 2001), there are no facts that permit us to infer harassment based on race or gender. As such, Plaintiff has failed to adequately plead a claim for hostile work environment under Title VII.

---

[11] Plaintiff brings the hostile work environment claim as to race and gender discrimination under Title VII, not disability discrimination under the ADA. (*See* Pl.'s Resp. 6-7.)

### E. Leave to Amend

Courts should freely grant leave to amend a complaint when justice so requires "unless it would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). "Neither inequity nor futility of amendment is present" and there is no indication that Plaintiff "lacks good faith or proper motives." *Id.* Therefore, we will permit Plaintiff to amend her Complaint to cure the deficiencies.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint will be granted, and Plaintiff will be granted leave to amend the Complaint.

An appropriate order follows.

BY THE COURT:

_____

**R. BARCLAY SURRICK, J.**