IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LATONYA VANDERVEER | : |
| | : CIVIL ACTION |
| | : |
| v. | : NO. 16-1979 |
| | : |
| FEDEX GROUND PACKAGE SYSTEM, INC., ET AL. | : |

**MEMORANDUM**

Presently before the Court is Defendants' Second Motion to Dismiss. (ECF No. 20.) For the following reasons, Defendants' Motion will be granted in part and denied in part.

## I. BACKGROUND

### A. Procedural History

On February 3, 2017, we issued a Memorandum and Order granting Defendants' Motion to Dismiss for Failure to State a Claim, and granting Plaintiff leave to file an amended complaint. *Vanderveer v. Fedex Ground Package Sys., Inc.*, No. 16-1979, 2017 WL 467631, at *1 (E.D. Pa. Feb. 3, 2017).[1] The factual background surrounding this matter is set forth in that Memorandum.

On February 17, 2017, Plaintiff filed an Amended Complaint. (Am. Compl., ECF No. 19.) On March 3, 2017, Defendants filed the instant Motion to Dismiss Plaintiff's Amended Complaint. (Defs.' Mot., ECF No. 20.) Plaintiff filed a Brief in Opposition to Defendants'

---

[1] Plaintiff's original Complaint asserted the following claims: race and gender discrimination under Title VII of the 1964 Civil Rights Act ("Title VII") against Defendant FedEx Ground Package System, Inc. ("FedEx Ground") (Count I); race discrimination under 42 U.S.C. § 1981 against FedEx Ground and Craig Steiner (Count II); disability discrimination under the Americans with Disabilities Act ("ADA") against FedEx Ground (Count III); and similar claims under the Pennsylvania Human Relations Act ("PHRA") against FedEx Ground and Steiner (Count IV).

Second Motion to Dismiss on March 31, 2017. (Pl.'s Br., ECF No. 23.) On April 5, 2017, Defendants filed a Reply to Plaintiff's Brief. (Defs.' Reply, ECF No. 24.)

## B. Amended Complaint

Plaintiff is an African American woman who was employed by Defendant FedEx Ground as a non-package handler. She was terminated for work performance and violating company policy. In her Amended Complaint, Plaintiff alleges additional facts in order to remedy the problems with the original Complaint. Specifically, Plaintiff alleges *inter alia* that there were two Caucasian men who worked as Operations Managers that were not disciplined for their performance issues. (Am. Compl. ¶ 25.) Plaintiff alleges that these two Caucasian men—Zack and Dan—did not adequately perform their responsibilities as Operations Managers. (*Id*. ¶¶ 24, 26.) Specifically, Zack and Dan did not complete the proper clean up and set up procedures that were necessary for operations to run smoothly. (*Id*.) Zack and Dan were Operations Managers for the night shift. (*Id*. ¶ 23.) Zack and Dan's poor performance negatively affected the morning operations, thus forcing Plaintiff to complete the required work for the night shift before beginning her own responsibilities. (*Id*. ¶ 28.) Plaintiff alleges that she informed Defendant Steiner—her supervisor—that Zack and Dan's poor performance was negatively affecting the morning shift; however, Steiner merely stated that he was "working on" getting the evening shift operations to run efficiently. (*Id*. ¶¶ 26, 27.) Steiner subsequently called Plaintiff "slow." (*Id*. ¶ 28.)

Plaintiff alleges that she made "numerous complaints" to Human Relations employee Michelle Merhottein regarding Steiner's "condescending attitude" towards Plaintiff. (*Id*. ¶ 30.) Merhottein told Plaintiff that she would speak with Steiner regarding his attitude. (*Id*. ¶ 31.) Plaintiff considered looking for a job in a different station because "Steiner's conduct had

become so intolerable." (*Id*. ¶ 34.) Merhottein tried to discourage Plaintiff from leaving her current station because she had "help[ed] [to] greatly turn [the station] around from a performance point of view." (*Id*. ¶ 35.)

Plaintiff also alleges that Steiner attempted to trigger Plaintiff to have an asthma attack on December 18, 2014. (*Id*. ¶ 112.) Plaintiff alleges that Steiner was aware that Plaintiff suffered from asthma because he had seen her use an inhaler on previous occasions. (*Id*. ¶ 114.) Plaintiff also told Steiner that she had previously had an asthma attack while working at another station, explaining that the attack occurred during the company's peak season. (*Id*. ¶¶ 115, 116.) After hearing this story, Steiner told Plaintiff to keep her inhaler with her while at work and that he "didn't need that happening." (*Id*. ¶ 117.) Plaintiff alleges that Steiner should have known that his actions on December 18, 2014 would have triggered an asthma attack. (*Id*. ¶ 112.)

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement,

3

must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id*. at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679). Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Finally, "a complaint need not establish a prima facie case in order to survive a motion to dismiss." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788-89 (3d Cir. 2016). A prima facie case is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002). It therefore is "not a proper measure of whether a complaint fails to state a claim." *Fowler*, 578 F.3d at 213. "Instead of requiring a prima facie case, the post-*Twombly* pleading standard 'simply calls for enough facts to raise a reasonable expectation that discovery

4

will reveal evidence of' the necessary elements.'" *Connelly*, 809 F.3d at 789 (quoting *Phillips*, 515 F.3d at 234).

## III. DISCUSSION

Plaintiff's Amended Complaint asserts the following claims: race and gender discrimination under Title VII (Count I); hostile work environment under Title VII (Count II); race discrimination under 42 U.S.C. § 1981 (Count III); disability discrimination under the ADA (Count IV); and similar claims under the PHRA (Count V).

### A. Race and Gender Discrimination under Title VII, Section 1981, and the PHRA[2] (Counts I, III, and V)

Title VII provides that it is an "unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a). "[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* § 2000e-2(m). The statute encompasses two theories of employment discrimination: a pretext theory as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), wherein a plaintiff claims that an employer's justification for an employment decision is false; and a mixed-motive theory as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), under which a plaintiff claims that an employment decision was made based on both legitimate and illegitimate reasons. *Connelly*, 809 F.3d at 787. A

---

[2] The standards used in evaluating claims of race and gender discrimination under Title VII are also used in evaluating similar claims under 42 U.S.C § 1981. *Anderson v. Wachovia Mortgage Corp.*, 621 F.3d 261, 267 (3d Cir. 2010) (citation omitted). In addition, the analysis under Title VII is identical to the analysis under the PHRA. *Huston v. Procter & Gamble Paper Products Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citation omitted).

5

plaintiff is "not obliged to choose whether she is proceeding under a mixed-motive or pretext theory." *Id.* at 791. However, Plaintiff states that she was "pretextually and unlawfully terminated on or about December 18, 2014." (Am. Compl. ¶ 36.) Plaintiff also uses the *McDonnell Douglas* framework when arguing her race and gender discrimination claims, (*see* Pl.'s Br. 5-6), and does not claim that there were legitimate reasons for her termination. Therefore, as we did in our previous Memorandum, we will proceed under the *McDonnell Douglas* framework.

Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802. The plaintiff establishes a prima facie case by showing that: "(1) s/he is a member of a protected class; (2) s/he was qualified for the position she sought to retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citations omitted).[3] The parties' dispute centers on the fourth prong.

A plaintiff may establish the fourth prong of the prima facie case by alleging "that similarly situated individuals outside the plaintiff's class were treated more favorably [than the plaintiff]." *Anderson*, 621 F.3d at 273-74 (citations omitted). "While similarly situated does not mean identically situated, the plaintiff must nevertheless be similar in all relevant respects." *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222-23 (3d Cir. 2009) (citation and internal quotation marks omitted). The Third Circuit noted that relevant factors include "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had

---

[3] The elements for establishing a prima facie case are the same for race and gender discrimination claims. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999) (evaluating a racial discrimination claim under *McDonnell Douglas*); *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006) (evaluating a gender discrimination claim under *McDonnell Douglas*).

6

engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 223 (citation and internal quotation marks omitted); *see also Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003) ("In the context of personnel actions, the relevant factors for determining whether employees are similarly situated often include the employees' supervisors, the standards that the employees had to meet, and the employees' conduct." (citation omitted)).

Defendants argue that Zack and Dan were not "similarly situated" to Plaintiff because Plaintiff was disciplined for not supervising her subordinates properly, whereas Zack and Dan were not fulfilling their clean up and set up responsibilities. We are satisfied that Plaintiff has alleged sufficient facts to demonstrate that Zack and Dan were similarly situated to Plaintiff because, as Operations Managers, they shared the same work responsibilities as Plaintiff. However, unlike Plaintiff, Steiner never disciplined Zack or Dan for their poor performance issues or for disrupting the flow of operations. Steiner, Zack, and Dan are all Caucasian males. Accordingly, we find that Zack and Dan's conduct is sufficiently similar to state a plausible claim for discrimination.[4]

### B. Hostile Work Environment (Count II)

A hostile work environment exists for purposes of a Title VII claim when unwelcome racist or sexist conduct unreasonably interferes with a person's performance or creates an

---

[4] Defendants also argue that it is "disingenuous" for Plaintiff to allege that she was treated differently because she did not personally witness Zack and Dan's interactions with Steiner. (Defs.' Mot. 5.) We reject this argument. "The applicable standard of review [for a 12(b)(6) Motion] requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989) (*overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). We will therefore accept Plaintiff's allegations and permit the parties to engage in discovery.

7

"intimidating, hostile or offensive working environment." *Weston v. Pennsylvania*, 251 F.3d 420, 425-26 (3d Cir. 2001). To properly allege a hostile work environment claim pursuant to Title VII, a plaintiff must demonstrate that: (1) she suffered intentional discrimination because of her membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person of the same class in her position; and (5) there is a basis for vicarious liability. *Brooks v. CBS Radio, Inc.*, 342 F. App'x 771, 775 (3d Cir. 2009). In determining whether a workplace qualifies as a hostile environment under Title VII, courts consider several factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ullrich v. U.S. Sec'y of Veterans Affairs*, 457 F. App'x. 132, 140 (3d Cir. 2012) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

For a hostile work environment claim to succeed, "the harassment must be so severe or pervasive that it alters the conditions of employment and creates an abusive environment." *Weston*, 251 F.3d at 426. "[S]imple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted). Here, Defendants argue that Steiner's actions cannot be considered "severe or pervasive" for the purpose of alleging a hostile work environment.[5] Defendants argue that Plaintiff's hostile work environment claim is only supported by one incident, namely Steiner's

---

[5] Defendants also argue that Plaintiff's hostile work environment claim must fail because Plaintiff has not alleged any facts from which we can infer evidence of discrimination. However, as discussed above, we find that Plaintiff has alleged facts which support an inference of discrimination. We therefore reject Defendants' argument.

behavior towards Plaintiff on December 18, 2014.  Defendants contend that the other factual allegations that Plaintiff makes in her Amended Complaint amount to "rife (and irrelevant) speculation," which "strains credulity to the point of absurdity."  (Defs.' Mot. 8.)  We disagree.

"Courts in this Circuit have . . . shown a reluctance to dismiss a complaint at the 12(b)(6) stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe and/or pervasive."  *Booker v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 575, 582 (E.D. Pa. 2012) (citation and internal quotation marks omitted).  "Because the inquiry is fact-intensive, summary judgment provides a more appropriate vehicle to resolve this issue, as the parties at that stage have had an opportunity to conduct discovery and develop their claims."  *Ingram v. Vanguard Grp., Inc.*, No. 14-3674, 2015 WL 4394274, at *19 (E.D. Pa. July 17, 2015) (citation and internal quotation marks omitted).

Here, Plaintiff alleges that she made several complaints to the Human Resources Department regarding Steiner's "condescending attitude" towards her.  (Am. Compl. ¶ 30.)  Plaintiff states that Steiner's conduct "had become so intolerable" that she spoke with Merhottein regarding a job transfer.  (*Id*. ¶ 34.)  Furthermore, on December 18, 2014, Steiner pointed his finger in front of Plaintiff's face and began to shout at her.  (*Id*. ¶ 42.)  Plaintiff states that Steiner yelled at her on multiple occasions that day and invaded her personal space.  (*Id*. ¶¶ 59-66.)  Plaintiff began to cry as a result of Steiner's actions, however Steiner continued to yell at Plaintiff.  (*Id*. ¶ 70.)  Steiner also threatened to call the police if Plaintiff did not come into his office.  (*Id*. ¶ 74.)  Steiner's conduct towards Plaintiff on December 18, in conjunction with Plaintiff's allegations that Steiner was "condescending" towards her on multiple occasions, could plausibly amount to "severe or pervasive" discrimination.  Accordingly, Plaintiff has sufficiently stated a claim for a hostile work environment under Title VII.

## C. Disability Discrimination (Count IV)[6]

Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to [the] . . . discharge of employees . . . ." 42 U.S.C. § 12112. A "qualified individual with a disability" is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) that she is a disabled person under the ADA; (2) that she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that she has suffered an adverse employment decision as a result of discrimination. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).[7]

In our previous Memorandum, we held that Plaintiff's original Complaint did not provide any facts to suggest that Steiner knew that Plaintiff suffers from asthma. *Vanderveer*, 2017 WL 467631, at *7. Plaintiff's Amended Complaint contains additional facts, which demonstrate that Steiner did know that Plaintiff suffers from asthma. Steiner saw Plaintiff use her inhaler while at work, and Plaintiff told Steiner that she had previously suffered from an asthma attack while at a previous job. (Am. Compl. ¶¶ 114, 115.) However, mere knowledge that Plaintiff is disabled is insufficient to state a claim for disability discrimination under the ADA. In order to state a claim under the ADA, a plaintiff must establish causation by alleging facts which demonstrate that she "has suffered an adverse employment action because of that disability." *Deane v. Pocono Med.*

---

[6] The ADA and PHRA "are all to be interpreted consistently, and [] all have the same standard for determination of liability." *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (citing *McDonald v. Pa., Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 94-95 (3d Cir. 1995)).

[7] We determined in our previous Memorandum that Plaintiff was disabled under the ADA because she suffers from asthma. *Vanderveer*, 2017 WL 467631, at *7.

*Ctr.*, 142 F.3d 138, 142 (3d Cir. 1998) (citing *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). In order to demonstrate causation, Plaintiff must allege that she was "treated differently based on the protected characteristic, namely the existence of [her] disability." *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 236 (3d Cir. 2013).

Here, Plaintiff has not alleged facts which support an inference that Steiner treated Plaintiff differently because she has asthma. Plaintiff merely states that when she informed Steiner of an asthma attack that she had at a previous station, his response was that "he didn't need that happening." (Am. Compl. ¶ 117.) Plaintiff alleges that Steiner "knew or should have known based upon his conversations with Plaintiff that her work pace may have been slower than other employees because of her asthma." (*Id.* ¶ 118.) However, Plaintiff merely alleges that she told Steiner that it was "hard . . . to regain control of her breathing" after an asthma attack. (*Id.* ¶ 116.) These allegations are insufficient to state a plausible claim that Steiner disciplined Plaintiff because of her asthma, or—even more implausible—that Steiner intentionally caused Plaintiff to suffer an asthma attack. *See Duffy v. Kent Cty. Levy Court*, 591 F. App'x 41, 44 (3d Cir. 2014) (holding that a district court properly granted a defendant's motion to dismiss because the plaintiff did not allege facts which indicated that the defendant's actions were motivated by the plaintiff's disability). Accordingly, Plaintiff's ADA claim will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Second Motion to Dismiss Plaintiff's Amended Complaint will be granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:

_____
**R. BARCLAY SURRICK, J.**